## Howard v. Bank of Commerce et al.

(Decided Dec. 17, 1937.)

OLLIE JAMES COCKRELL and A. H. PATTON for appellant.
HENRY L. SPENCER for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

The Bank of Commerce of Lexington sued Eliza Howard and her husband, L. D. Howard, to recover on a $11,850 note, and to enforce a mortgage lien securing its payment. The chancellor canceled the note and mortgage, but on appeal the judgment was reversed and cause remanded with directions to eliminate the usury and give judgment for the balance. Bank of Commerce v. Howard, 257 Ky. 395, 78 S. W. (2d) 36, 37.

During the pendency of the action Dorcas Barnett, who had purchased from Eliza Howard her home place for $6,000 and other considerations, intervened. Thereupon the Howards proceeded against her on a cross-petition and were awarded a judgment for the purchase price and a lien on the land purchased. On appeal the judgment was affirmed. Barnett v. Howard, 267 Ky. 316, 102 S. W. (2d) 44, 45.

In the meantime the bank was awarded judgment for $3,028.99, with 6 per cent. interest from June 15, 1935, and, after the decision in Barnett v. Howard, supra, the court ordered the land sold for the purpose of satisfying the bank's claim and a second lien of $6,000 in favor of the Howards. The property was appraised at $4,000, and Henry L. Spencer, who represented the Howards in their suit against Dorcas Barnett, became the purchaser at the price of $3,419.37. Later on he sold the property to Emily Hensley and Glenn Mann for a profit of $250, and they executed a sale bond for the amount of his bid. In due time Eliza Howard excepted to the sale, and her exceptions having been overruled, she and her husband have appealed.

The principal ground of exception was that Eliza Howard was laboring under the impression that the bid of Henry L. Spencer was a joint bid for Spencer and herself, and she did not know at the time that her husband and co-defendant had agreed that said bid might be transferred and assigned, and that same was against her will, consent, and authority. She filed with her exceptions the written offer of Gladys Barnett to bid the sum of $3,419.37, the purchase price of the land sold, also the sum of $250, attorney's fee of Henry L. Spencer, and the additional sum of $600, and to convey to Eliza Howard a life estate in the property. Accompanying the offer was a bond for $3,419.37 payable to the master commissioner executed by Eliza Howard, S. L. Combs, Francis Barnett, and Willie Hounshell.

In support of her exceptions Eliza Howard testified as follows: She thought Mr. Howard was going to bid it in himself, but later she found out that Henry Spencer bid it in for him. Mr. Spencer told her he had arrangements to bond one-half of it and for the old man to bond the other half. If she had known the old man was not going to do it, she herself would have bonded it. She was willing to execute a good and solvent bond for the bank's debt, and, in addition thereto, pay Mr. Spencer's fee of $250. She had no property other than that sold in the action. She had an understanding with Leander that he would bid it in for her. Francis Barnett testified that in her judgment the land was worth $6,000. She was present at the sale, but made no bid on the land. She was going to assist and would have assisted the old man. According to Dorcas Barnett, the land was worth $4,000 or $5,000. She did not bid on the land because she thought that she and Spencer had an understanding and that she would be able to buy the land from him. Spencer told her that he was going to bid in the bank's debt and that was all. According to Tribue Howard, the land ought to have been worth $6,000. Leander Howard testified that there were only the two bids at the sale. The bank bid the debt, interest, and costs, and Spencer bid $1 more. Dorcas Barnett was present, but made no bid. He never agreed at any time for her to pay $600 and the bank and take the property. The land was sold once before and brought $4,600. It ought to be worth $5,000.

On the other hand H. L. Spencer, the purchaser, testified as follows: He was the attorney for L. D. and

Eliza Howard in their cross-action against Dorcas Barnett, but had never received any pay for his services. He submitted several propositions from Dorcas Barnett to her father, L. D. Howard, but he would not consider them. He then told L. D. Howard and Eliza Howard together that if they could furnish surety for one-half he could furnish surety for the other half, and they would bid it up to $4,000 and by that plan have $600 to divide between them. They then set about to find sureties. He found George Noble; and he thought his brother, Herbert Spencer, would sign the bond. L. D. Howard kept seeking a surety, but never could find any. He worked until Saturday before the day of sale on Monday. He came to witness and said it looked like every time he found somebody to sign his bond somebody would talk him out of it and he could not do anything. He then told Howard he was going to protect himself and him as far as he could and was going to bid up to $4,000. Howard said, "All right." He also told Dorcas Barnett the same thing. When the sale came on, he, Dorcas Barnett, and the bank's agent were all there. The agent of the bank bid its debt, interest, and costs, and he bid $1 more. The commissioner was slow in making the sale. He did not want the land, but had gone through a large and long lawsuit, and wanted his fee. He then told Uncle Leander if he could find a buyer he would sell the bid to him, and the commissioner let them go along for a month while they were trying to find somebody to buy it. Finally Leander came to him with Emily Hensley and Glenn Mann, and they told him they would bond the bank's indebtedness and make him secure for $250. Thereupon he assigned his bid to them for that consideration.

It is insisted on behalf of appellants that this case falls within the rule that, though inadequacy of price alone is not a sufficient ground to set aside a sale, yet, when the price paid is greatly disproportionate to the actual value of the property, only slight additional circumstances are required to make it the duty of the chancellor to set aside the sale. Durham v. Elliott, 180 Ky. 724, 203 S. W. 539. The argument is that not only was the property worth much more than it brought at the sale, but Mr. Spencer stated to Mrs. Howard that he would bid the property up to $4,000, and she, relying on that statement, did not attend the sale and the property was bid in for a less amount. It is also argued that Mr.

Spencer did not tell Mrs. Howard that he intended to assign his bid, and did not give her an opportunity to make bond and take the property. An agreement to bid the property up to $4,000 does not mean that the intending purchaser will make the property bring that much at all hazards, but only that he will go as high as $4,000, if necessary, in order to buy the property. Mr. Spencer bid $1 more than the bank's debt, interest, and costs, and there being no higher bid, there was no need for him to raise his own bid. Aside from this, the Howards endeavored before the sale to find sureties who would go on their bond for one-half the property in the event of its purchase by them and Spencer, but were unable to do so, and even after the sale they were given an opportunity to join Spencer in the purchase, but were unable to procure sureties. Then too, the bond tendered on the hearing of the exceptions was merely for the amount of the Spencer bid, and was not sufficient to secure an advance bid, and the evidence that the property was worth any substantial sum in excess of the amount of the Spencer bid is not very persuasive. In the circumstances it cannot be said that the inadequacy of price was so great as to shock the conscience or create a presumption of fraud, or that the attendant circumstances were such as to make out a case of apparent unfairness or impropriety or oppression on the part of those connected with the sale. Fidelity & Columbia Trust Company v. White Construction Company, 258 Ky. 475, 80 S. W. (2d) 550; Henderson v. Henderson, 266 Ky. 319, 98 S. W. (2d) 904.

Judgment affirmed.